UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ANTHONY WAYNE REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00129-JMS-MJD |
| | ) | |
| MELODY TURNER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**

On May 29, 2019, the plaintiff, Anthony Wayne Reed, filed a motion for preliminary injunction seeking to be transferred to a minimum-security "out-custody" facility. Dkt. 9. The defendants responded on August 12, 2019, stating that Mr. Reed had been transferred to the minimum-security section of the Indiana State Prison (ISO) on August 1, 2019, therefore his motion was moot. Dkt. 36. Mr. Reed replied on August 30, 2019, and after receiving an extension of time, amended his reply on October 1, 2019. Dkt. 41, dkt. 52. On December 2, 2019, the Court ordered the defendants to respond to Mr. Reed's assertion that his motion was not moot because he had not been transferred to a facility comparable to Edinburgh Correctional Facility (Edinburgh) where he had previously been housed. Dkt. 59. The defendants responded and Mr. Reed replied. Dkt. 60; dkt. 63. The motion is now ripe for review.

**I.
Background**

Mr. Reed states that he used to be housed at Edinburgh, a minimum-security "out-custody" facility. His complaint alleges that he was transferred to Putnamville Correctional Facility in retaliation for First Amendment activities. He now argues that although he was recently transferred to ISO, it is a facility that houses medium-security "in-custody" inmates as well as restricted

minimum-security "in-custody" inmates and is therefore not comparable to his previous housing at Edinburgh. He states that he is housed with inmates who are members of security threat groups. Dkt. 51. Although Mr. Reed does not currently feel his physical safety is threatened, he has been threatened with bodily harm and reports that violent incidents occur daily in the dorm areas. Dkt3. 52 at 3; 63 at 7. He has been told that his chances of going to a work release facility are reduced because of his current placement and he was denied work release due to his disciplinary conviction even though that conviction was vacated by this Court. Dkt. 51. He seeks transfer to a facility that only houses minimum-security "out-custody" inmates.

## II.
## Preliminary Injunction Standard

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). "To survive the threshold phase, a party seeking a preliminary injunction must satisfy three requirements." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018) (internal quotations omitted)). It must show that: (1) "absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims"; (2) "traditional legal remedies would be inadequate"; and (3) "its claim has some likelihood of succeeding on the merits." *Id.* Only if the moving party meets these threshold requirements does the court then proceed to the balancing phase of the analysis. *Id*. In the balancing phase, "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Id*.

# III.
# Analysis

## A. Likelihood of Success on the Merits

The Court begins with whether Mr. Reed has a likelihood of success on the merits of his First Amendment retaliation claims. To state a First Amendment retaliation claim, Mr. Reed must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity he engaged in was at least a motivating factor for the retaliatory action. *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (*citing Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Inmates do not have a constitutional right to be housed in any particular institution or under any particular conditions of confinement. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."). But otherwise permissible conduct can become impermissible when done for retaliatory reasons. *Murphy v. Lane*, 833 F.2d 106, 108–09 (7th Cir. 1987) (district court reversed for dismissing complaint challenging otherwise permissible prison transfer because of sufficient allegation of retaliation).

The defendants do not address Mr. Reed's likelihood of success on the merits in either of their response briefs. Mr. Reed's complaint alleges that while he was housed at Edinburgh Correctional Facility, he was twice transferred to a higher security facility after receiving retaliatory disciplinary convictions that were later overturned. Mr. Reed alleges that the false disciplinary charges were written in retaliation for filing grievances about a correctional officer that was harassing him. After his second disciplinary conviction was overturned, and his

classification appeal was granted, he was still not transferred back to a lower-security facility until after he filed this lawsuit and motion for preliminary injunction.

Mr. Reed has adequately alleged that he engaged in protected First Amendment activity and that he suffered a deprivation likely to deter that activity. Although the Court lacks sufficient evidence to evaluate conclusively whether Mr. Reed is likely to demonstrate that the protected activity he engaged in was at least a motivating factor for the retaliatory action as to each defendant, he has "presented a chronology of events from which retaliation [can] be inferred." *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009).

Defendant Frances Osburn, Warden of Edinburgh, reviewed Mr. Reed's grievance regarding his alleged harassment by a correctional officer. She then wrote a conduct report accusing Mr. Reed of threatening the correctional officer in his grievance. The disciplinary conviction that resulted from that conduct report, No. JCU 17-10-0034, was later vacated by this Court. *See Reed v. Smith*, 2018 WL 3619536 (S.D. Ind. July 30, 2018). The direct link between Mr. Reed's grievance and the defendant's writing of a conduct report against him that was later overturned could lead a jury to infer that Mr. Reed's grievance was a motivating factor in Warden Osburn's writing of the conduct report.

Mr. Reed has demonstrated that at least some of his claims are likely to succeed on the merits.

### A. Inadequate Legal Remedies

The Court turns next to the second factor, which asks whether there is "no adequate remedy at law." *GEFT Outdoors*, 922 F.3d at 364 (citation and quotation marks omitted). This factor requires Plaintiff to establish "that any award would be seriously deficient as compared to the harm suffered." *Whitaker by Whitaker v. Kenosha Unified School District No. 1 Board of Education*, 858 F.3d 1034, 1045 (7th Cir. 2017) (citations and quotation marks omitted).

After Mr. Reed filed this lawsuit, he was transferred to Indiana State Prison's "Outside" minimum security housing unit (ISO) which houses both level I and level II inmates. See. Dkts. 1; 36-1; 60-1. Mr. Reed alleges that this facility is not comparable to his previous facility, Edinburgh. He alleges that ISO differs from Edinburgh in five ways: 1) he is housed with members of high-risk threat groups, 2) he is housed with inmates with longer time left on their sentences, 3) he is housed with Level II inmates, 4) he is further away from his family so they can no longer visit him, and 5) he is less likely to be granted access to a work release program.

The defendants acknowledge that Mr. Reed may be housed with members of high-risk threat groups at ISO, but they contend that members of high-risk threat groups can be classified as Level I inmates meaning they could also be housed at Edinburgh. The Court does not find that Mr. Reed is likely to suffer any harm in relation to exposure to members of high-risk threat groups at ISO as compared to similar exposure at Edinburgh.

According to the Indiana Department of Correction website, Mr. Reed's current earliest possible release date is December 25, 2020. He alleges that his current facility houses inmates with longer times left on their sentences than him and that these inmates take advantage of inmates like Mr. Reed with only a short time left on their sentences. This occurs because it is well known that inmates near their release dates are motivated to avoid conduct violations that could lengthen their sentences. The defendants do not refute Mr. Reed's characterization of the dynamics between inmates with differing out dates at ISO. Nor do the defendants refute that Mr. Reed has been moved further away from his family and that he is now housed with Level II inmates when he was previously only housed with Level I inmates. Dkt. 60.

The defendants argue that Mr. Reed has no admissible evidence to show that he is less likely to be transferred to a work release program from ISO. In reply, Mr. Reed has produced a

classification appeal which shows that he was denied work release on September 23, 2019, due to his disciplinary transfer to ISO. He appealed on the grounds that his disciplinary conviction had been vacated. His appeal was granted and he was told he would be considered for work release again in the future. Dkt. 63-3 at 2. The Court has no evidence that Mr. Reed has been reevaluated for work release since September 23, 2019.

The evidence also shows that Mr. Reed has been barred from returning to Edinburgh. Dkt. 63-7. On July 24, 2019, Mr. Reed was approved for transfer to a Level I facility, but the approved facility section stated that he could not return to JCU, which is the Indiana Department of Correction's designation for Edinburgh. *Id*. The defendants have not provided any evidence or argument for why Mr. Reed cannot return to Edinburgh. Nor have they argued that there are no other Level I-only facilities which could house Mr. Reed.

The dispositive motion deadline in this action is June 5, 2020. It is unlikely that the case will be resolved much before Mr. Reed's earliest possible release date of December 25, 2020.

The evidence before the Court demonstrates that Mr. Reed has been relocated further away from his family to a facility with Level II inmates and was denied access to a work release program based on a disciplinary conviction that was overturned by this Court. The resolution of this case will not adequately compensate Mr. Reed for the lost opportunity of participating in a work release program or living nearer to his family prior to his release. Furthermore, he has alleged that he is exposed to a greater risk of receiving a conduct report which could lengthen his incarceration at his current facility because he is housed with longer-term inmates who seek to take advantage of inmates with upcoming release dates. He has demonstrated that any monetary award would be seriously deficient when compared to these harms.

**C. Irreparable Harm**

The third threshold factor requires Mr. Reed to establish irreparable harm. "[H]arm is considered irreparable if it cannot be prevented or fully rectified by the final judgment after trial." *Whitaker*, 858 F.3d at 1045 (citation and internal quotation marks omitted). For the same reasons Mr. Reed has no adequate remedy at law, he has established that he faces irreparable harm absent a preliminary injunction.

**D. Balance of Harms & Public Interest**

Because Mr. Reed has established the above three threshold requirements, "the court must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest." *Planned Parenthood of Ind. & Ky.*, 896 F.3d at 816. The Seventh Circuit "'employs a sliding scale approach' for this balancing: if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors*, 922 F.3d at 364 (quoting *Planned Parenthood*, 896 F.3d at 816).

As noted above, Mr. Reed has a significant likelihood of success on the merits. Moreover, the balance of harms weighs in his favor. He has presented evidence that he has been denied work release based on a vacated disciplinary conviction. The defendants have not presented any evidence that they will suffer harm if a preliminary injunction is entered. Without such evidence, the balance of harms weighs in Mr. Reed's favor.

For similar reasons, public interest favors granting a preliminary injunction. It is in the public interest to ensure that inmates' First Amendment rights are upheld. More generally, the vindication of constitutional rights serves the public interest. *See Joelner v. Vill. of Washington Park, Ill.*, 378 F.3d 613, 620 (7th Cir. 2004) ("Surely, upholding constitutional rights serves the public interest.") (quoting *Newsom v. Albemarle County Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003)); *see also Preston*, 589 F.2d

at 303 n.3 ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest.").

Accordingly, Mr. Reed is entitled to a preliminary injunction.

## IV.
## Conclusion

For the reasons explained above, Mr. Reed's motion for preliminary injunction, dkt. [9], is **granted**.

Preliminary injunctive relief related to prison conditions "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Given the likelihood that Mr. Reed can show the defendants retaliated against him for engaging in activity protected by the First Amendment, the preliminary injunction set forth below is the least intrusive means to correct the harm. Mr. Reed's requested relief of transfer to a different correctional facility is an extraordinary remedy the Court is reluctant to grant. The least intrusive remedy necessary to correct the harm in this instance is to require the defendants[1] reconsider the plaintiff for work release within 45 days of this Order.

The preliminary injunction automatically expires ninety days after the issuance of this Order. *Id.* Mr. Reed may request that it be renewed by no later than **twenty-one days** before the injunction expires.

The Court enters a preliminary injunction in Mr. Reed's favor as follows:

---

[1] Although it is not clear from the record which defendant or defendants have the authority to initiate a review of the plaintiff for work release, the Court notes that the plaintiff has sued the defendants in their individual and official capacities. Therefore, to the extent a named defendant is no longer Mr. Reed's custodian or no longer holds the same position at the Indiana Department of Correction, the defendants shall substitute the appropriate successor officer pursuant to Rule 25(d).

- The defendants shall have **through April 27, 2020**, in which to reconsider Mr. Reed for a work release program and to notify him of the results of and basis for their reconsideration decision.

The **clerk is directed** to send a copy of this Order to counsel for the Indiana Department of Correction.

**IT IS SO ORDERED.**

Date: 3/10/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

ANTHONY WAYNE REED
930206
INDIANA STATE PRISON
ISO - Outside facility
Inmate Mail/Parcels
One Park Row
MICHIGAN CITY, IN 46360

David C. Dickmeyer
INDIANA ATTORNEY GENERAL
David.Dickmeyer@atg.in.gov

Sarah Jean Shores
INDIANA OFFICE OF THE ATTORNEY GENERAL
sarah.shores@atg.in.gov

Ilene M. Smith
INDIANA ATTORNEY GENERAL
Ilene.Smith@atg.in.gov